NOT RECOMMENDED FOR PUBLICATION
File Name: 23a0420n.06

Case No. 23-3203

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
Oct 02, 2023
DEBORAH S. HUNT, Clerk

SHARON STANFORD; KATINA COTTRELL;
J.S.; J.E.,

    Plaintiffs-Appellants,

v.

NORTHMONT CITY SCHOOL DISTRICT;
JAMES CHAD KALTENBACH, in his official
capacity of Vice Principal at Northmont City
Schools,

    Defendants-Appellees.

)
)
)
)
)
)
)
)
)
)
)
)
)
)

ON APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF
OHIO

OPINION

Before: SUTTON, Chief Judge; COLE and THAPAR, Circuit Judges.

THAPAR, Circuit Judge. A school district suspended two students for smelling like marijuana on campus. The students and their parents sued, arguing the school district's marijuana policy discriminated against racial minorities. The district court granted summary judgment against them. We affirm.

I.

After arriving late to school, J.S. and three other students signed in and went to class. The secretary at the front desk told Vice Principal Chad Kaltenbach that J.S. and his friends smelled like marijuana. Minutes later, J.S.'s teacher told Kaltenbach he smelled the same thing when J.S. walked into class.

The Northmont City School District prohibits students from smelling like marijuana on campus. So, Kaltenbach called J.S. to his office. Kaltenbach told J.S. about the reports, notified him that he could be suspended, and asked him to explain the smell. J.S. didn't. Kaltenbach asked J.S. to empty his backpack and pockets, patted the outside of his pockets, and sniffed his hand. It smelled like marijuana. Kaltenbach then called in two school resource officers and another administrator, and each confirmed the smell. In line with district policy, Kaltenbach suspended J.S. for ten days.

Nearly a year later, J.E. was in school when two of his teachers reported that he smelled like marijuana. Assistant Principal Teresa Dillon called J.E. into her office. Noticing the smell, Dillon explained the teachers' report and told J.E. that he could be suspended. Then, she searched J.E., asking him to empty his backpack and pockets and remove his shoes and socks. Dillon called in a school resource officer, Kaltenbach, and another administrator, who each smelled the same thing. After giving J.E. an opportunity to explain the smell, Dillon suspended J.E. for ten days.

J.S. and J.E. argue they were suspended because they are Black. They and their parents sued Kaltenbach and the school district, raising claims under state law, the Fourth Amendment, Title VI, the Equal Protection Clause, and the Due Process Clause. The district court dismissed the federal claims on summary judgment and declined to retain jurisdiction over the state-law claims. Plaintiffs appeal the dismissal of the Fourth Amendment, due process, and equal protection claims. We affirm.

II.

All the plaintiffs—J.S., his parents, J.E., and his mom—sue under 42 U.S.C. § 1983 to vindicate J.S. and J.E.'s Fourth Amendment, equal protection, and due process rights. But the cause of action created by § 1983 "is entirely personal to the direct victim of the alleged

constitutional tort." *Claybrook v. Birchwell*, 199 F.3d 350, 357 (6th Cir. 2000). That means the parents can't bring claims in their own capacities based on violations of J.S. and J.E.'s rights. *Jaco v. Bloechle*, 739 F.2d 239, 240–41, 243 (6th Cir. 1984). The parents try to do just that. The district court thus properly dismissed their claims.

On appeal, the parents suggest they have an equal protection claim based on their own parental right to direct their children's education. But they didn't raise this claim before the district court. The complaint didn't mention it, and plaintiffs' summary-judgment brief referenced the right only once—in a fact section, without tying it to an equal protection claim. Because the parents didn't properly raise the claim before the district court, they forfeited the right to pursue it on appeal. *See Bridgeport Music, Inc. v. WM Music Corp.*, 508 F.3d 394, 400 (6th Cir. 2007); *Wright v. City of Euclid*, 962 F.3d 852, 879 (6th Cir. 2020). Thus, we focus on J.S. and J.E.'s claims alone.

### III.

### A.

J.S. and J.E. argue that they were searched in violation of the Fourth Amendment. The Fourth Amendment imposes two requirements on public-school officials who search students. First, officials must have "reasonable grounds" to believe they'll find evidence that the student violated school rules. *New Jersey v. T.L.O.*, 469 U.S. 325, 342 (1985). Second, the scope of the search must be "reasonably related" to its objectives and not "excessively intrusive" in light of the student's age and the suspected infraction. *Id.*

The searches of J.S. and J.E. met both requirements. First, Kaltenbach searched J.S. after receiving reports from a teacher and a secretary that J.S. smelled like marijuana. Similarly, Dillon searched J.E. after two teachers reported—and Dillon herself noticed—the smell on J.E. These

reports gave Kaltenbach and Dillon reasonable grounds to search for drugs. Indeed, we've repeatedly held that officers have probable cause to search for drugs when they smell marijuana. *E.g.*, *United States v. Garza*, 10 F.3d 1241, 1246 (6th Cir. 1993). Probable cause is a higher bar than "reasonable grounds." *See T.L.O.*, 469 U.S. at 341. So, if the smell of marijuana gives officials probable cause to search for drugs, then it certainly gave Kaltenbach and Dillon "reasonable grounds" to do so. *See id.* at 342.

Second, the searches were reasonable in scope. The district has an "important interest" in keeping drugs out of school, so officials have more leeway in searching for drugs than in searching for evidence of less serious violations. *Bd. of Educ. of Indep. Sch. Dist. No. 92 v. Earls*, 536 U.S. 822, 838 (2002); *see Beard v. Whitmore Lake Sch. Dist.*, 402 F.3d 598, 605 (6th Cir. 2005). Recognizing this, we've upheld drug searches that were much more intrusive than those at issue here. *See, e.g.*, *Williams ex rel. Williams v. Ellington*, 936 F.2d 881, 883, 887 (6th Cir. 1991); *Tarter v. Raybuck*, 742 F.2d 977, 979, 983 (6th Cir. 1984). For example, after school officials thought they saw a student holding drugs, they searched the student's purse and locker; asked the student to empty her pockets; and requested that the student remove her shoes and socks, take off her t-shirt, and lower her jeans. *Williams*, 936 F.2d at 883, 887. Given the school's strong interest in keeping drugs out of school, we held the search was reasonable. *Id.* at 887; *see also Tarter*, 742 F.2d at 979 (requiring a student to empty pockets and remove shoes and shirt).

Here, school officials didn't see J.S. and J.E. with drugs. *Cf. Williams*, 936 F.2d at 883. But they did smell marijuana on them. And the searches were much narrower here than in *Williams*. Kaltenbach and Dillon checked the students' backpacks and asked them to empty their pockets. Kaltenbach patted J.S.'s pockets and legs, and J.E. removed his shoes and socks. Both students remained clothed. *Cf. id.*; *Tarter*, 742 F.2d at 979, 983. And the district didn't search

their lockers. *Cf. Williams*, 936 F.2d at 883. These minimally intrusive searches were reasonably related to the district's interest in confiscating drugs and were appropriate in light of the students' age, sex, and suspected violation. The searches didn't violate the Fourth Amendment.

J.S. and J.E. raise three arguments in response. None moves the needle.

First, J.S. argues that Kaltenbach lacked individualized suspicion. It's true that J.S. was around three other students when the secretary smelled him. But that gave Kaltenbach reason to suspect J.S. "*and* the others in the group." *See United States v. McCallister*, 39 F.4th 368, 376 (6th Cir. 2022) (emphasis added). Moreover, J.S.'s teacher told Kaltenbach that J.S. specifically smelled like marijuana. Kaltenbach thus had reasonable grounds to suspect J.S. individually.

J.E. raises the same argument, with the same result. Two teachers reported that J.E. specifically smelled like marijuana, and Dillon noticed the smell when J.E. entered her office. Dillon had reasonable grounds to suspect J.E. had violated school rules.

Second, J.S. and J.E. argue that three officials—Kaltenbach, one of the school resource officers who confirmed J.S.'s smell, and J.S.'s teacher—aren't credible. Plaintiffs argue that, because a jury might disbelieve these officials when they testify about the smell, the district court should have allowed their Fourth Amendment claims to go to trial.

This argument faces an initial hurdle: an official's subjective intentions "play no role in ordinary . . . Fourth Amendment analysis." *Whren v. United States*, 517 U.S. 806, 813 (1996). To determine whether the searches violated J.S. and J.E.'s Fourth Amendment rights, we ask whether a *reasonable official* would have had grounds to perform the searches based on the information available "at [the] inception" of the search. *See T.L.O*, 469 U.S. at 341 (quoting *Terry v. Ohio*, 392 U.S. 1, 20 (1968)). Thus, we don't ask, for example, whether Kaltenbach subjectively believed that J.S. smelled like marijuana. *See Whren*, 517 U.S. at 812–13.

This dooms plaintiffs' credibility argument. To avoid summary judgment, plaintiffs must identify a "material" fact in dispute. Fed. R. Civ. P. 56(a). A fact is "material" if it would entitle plaintiffs to relief on their Fourth Amendment claims. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Here, because we focus on the hypothetical reasonable official, it doesn't matter whether Kaltenbach subjectively believed there were grounds to search J.S. *See Whren*, 517 U.S. at 812–13. Accordingly, it doesn't matter whether a jury would believe Kaltenbach's testimony that those grounds existed. *See generally id.* Kaltenbach's credibility isn't material.

The same is true of the officer's credibility. Because we focus on the evidence available to Kaltenbach "at [the] inception" of the search, it doesn't matter whether a jury would believe the officer who smelled J.S. *after* the search was completed. *See T.L.O.*, 469 U.S. at 341.

That leaves the credibility of J.S.'s teacher, who reported J.S.'s smell before Kaltenbach began the search. This credibility evidence could be relevant, but only to show that a reasonable official wouldn't have believed the report. *See generally id.* at 342. Even if plaintiffs' credibility evidence showed as much, the teacher's credibility still isn't material. A secretary told Kaltenbach that J.S. and his friends smelled like marijuana, and J.S. hasn't challenged the secretary's credibility. Regardless of the teacher's credibility, Kaltenbach had reasonable grounds to search J.S.

Third, J.S. argues that marijuana is harmless, so the school shouldn't suspend students who smell like it. But the legality of a search doesn't depend on "a judge's evaluation of the relative importance of various school rules." *Id.* at 342 n.9. The district has a strong interest in keeping drugs out of school. *Beard*, 402 F.3d at 605. And the district could reasonably decide that the smell of marijuana on campus encourages drug use or distracts from education. We won't second-guess that decision. *See T.L.O.*, 469 U.S. at 342 n.9.

Kaltenbach and Dillon had reasonable grounds to search J.S. and J.E., and their searches were reasonable in scope. Their searches didn't violate the Fourth Amendment.

B.

Turning to equal protection, J.S. argues that Kaltenbach suspended him because of his race, and both students argue that the district's marijuana policy is racially discriminatory. On this record, the district court properly dismissed both claims.

The Equal Protection Clause prohibits only intentional discrimination. *Washington v. Davis*, 426 U.S. 229, 239 (1976). So, J.S. must show that Kaltenbach treated him differently from similarly situated students because he is Black. *Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011). And to succeed against the district, J.S. and J.E. must show that the district enforces the marijuana policy "because of" its disproportionate impact on Black students. *Pers. Adm'r v. Feeney*, 442 U.S. 256, 279 (1979); *see also Monell v. Dep't of Social Servs. of City of N.Y.*, 436 U.S. 658, 694 (1978) (noting an official policy must be "the moving force" of the violation).

There are multiple ways to show intentional discrimination. The most straightforward is direct evidence—for example, a statement that the students were suspended out of racial animus. *See Rowan v. Lockheed Martin Energy Sys., Inc.*, 360 F.3d 544, 548 (6th Cir. 2004). More common is circumstantial evidence: a plaintiff can show that other, non-Black students (called comparators) were treated differently despite violating the same school rule. *Green Genie, Inc. v. City of Detroit*, 63 F.4th 521, 528 (6th Cir. 2023). But these comparators must be similarly situated "in all relevant respects" to the plaintiffs. *Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673, 682 (6th Cir. 2011). Otherwise, a factor other than racial animus could explain the difference in treatment.

J.S. and J.E. can't show intentional discrimination. Begin with J.S.'s claim against Kaltenbach. There's no direct evidence that Kaltenbach suspended J.S. because of his race. Nor has J.S. pointed to any similarly situated non-Black students whom Kaltenbach treated differently. Indeed, Kaltenbach enforced the marijuana policy against White and Black students and, on average, gave about the same punishment to both.

Without comparators or direct evidence of animus, J.S. turns to two other incidents. First, about a year before J.S.'s suspension, his sister asked for an accommodation in gym class, and Kaltenbach required that she submit a doctor's note first. After she submitted the note, J.S.'s sister got an accommodation, but she felt that Kaltenbach watched her more closely after that. Second, a Black peer testified that Kaltenbach refused to punish a student who made harassing comments about her.

Accepting these incidents as true, they don't show that Kaltenbach suspended J.S. because of his race. Nothing in the record indicates that Kaltenbach treated these other students differently *because of* their race. At most, these anecdotes show that some students had poor interactions with Kaltenbach and that those students happened to be Black. Moreover, J.S. hasn't "tie[d]" these other instances "to [the] adverse decision" affecting him. *Rowan*, 360 F.3d at 551. Kaltenbach's "statements or actions outside of the decisionmaking process" can't by themselves prove that Kaltenbach suspended J.S. because of his race. *EEOC v. Ford Motor Co.*, 782 F.3d 753, 768 (6th Cir. 2015) (en banc); *see Rowan*, 360 F.3d at 550. That's especially true here, where there's no evidence indicating that Kaltenbach's other decisions reflected racial animus.

The claim against the district also fails. To support this claim, J.S. and J.E. argue (1) two other students smelled like marijuana on campus but were treated better, (2) someone left a tribal face mask in the high-school parking lot, and (3) statistics show that the district punishes Black

students at a disproportionate rate. But plaintiffs forfeited the comparator and face-mask arguments. And the statistics can't support an equal protection claim by themselves.

When plaintiffs presented the comparator and face-mask evidence to the district court, the court rejected it. It held that the comparators weren't similarly situated "in all relevant respects" to J.S. and J.E. *See Rondigo*, 641 F.3d at 682. Unlike J.S. and J.E., one comparator was a middle schooler who, to reduce his suspension, participated in the school's drug diversion program. And school officials weren't aware that the other comparator smelled like marijuana. As for the face-mask evidence, the district court held that it was both beyond the scope of the complaint and irrelevant: there wasn't any evidence indicating that the face mask had been displayed or left by school officials. *See M.J. ex rel. S.J. v. Akron City Sch. Dist. Bd. of Educ.*, 1 F.4th 436, 454 (6th Cir. 2021) (noting the discriminatory act must be done "by a public official").

On appeal, plaintiffs briefly state that they disagree with these holdings, but they don't address the district court's reasoning or explain why the district court was wrong. Having "fail[ed] to address the district court's reason[s]" for rejecting the comparators and mask display, plaintiffs forfeited the arguments. *Scott v. First S. Nat'l Bank*, 936 F.3d 509, 522 (6th Cir. 2019) (quotation omitted).

That leaves the statistics. The statistics show that the district suspends Black students at a disproportionate rate. But the Equal Protection Clause prohibits only intentional discrimination. *Davis*, 426 U.S. at 239. So, J.S. and J.E. must do more than argue that the policy has a disproportionate impact on Black students. *See, e.g.*, *Feeney*, 442 U.S. at 272; *Wilson v. Collins*, 517 F.3d 421, 432 (6th Cir. 2008). In other words, they must do more than point to statistics: they must introduce evidence showing the district enacted the marijuana policy "because of," not "in

spite of," the disproportionate impact. *Feeney*, 442 U.S. at 279. J.S. and J.E. haven't properly presented any evidence, other than the statistics, to make that showing.

Defendants are thus entitled to summary judgment on the equal protection claims.

C.

Finally, the district court properly dismissed the due process claim. Under the Due Process Clause, when a public-school official suspends a student for ten days or fewer, the official must give the student notice of the charge, explain the evidence supporting the charge, and give the student an opportunity to respond. *Williams ex rel. Allen v. Cambridge Bd. of Educ.*, 370 F.3d 630, 639 (6th Cir. 2004). Nobody disputes that J.S. and J.E. received this process.

Before the district court, plaintiffs raised nine other due process violations. The district court rejected each on the merits. On appeal, plaintiffs make a single argument for why the district court erred: on summary judgment, "[t]here is no mandate to persuade the District Court that the [nine] contentions are winning ones." Appellant Br. 20. But plaintiffs don't address the district court's reasoning. Nor do they address the merits of the alleged violations or identify a disputed fact that, if true, would establish a due process violation. Indeed, they don't identify any of the nine alleged violations in their appellate briefing. By raising the issues "in a perfunctory manner" and without responding to the district court's reasoning, plaintiffs forfeited the arguments. *Wright*, 962 F.3d at 878 (quotation omitted); *see Scott*, 936 F.3d at 522.

\* \* \*

We affirm.